ELSTON v. RUSCH.

1. BANKRUPTCY—PROVISIONS OF BANKRUPTCY ACT NOT INCONSIST-
ENT.

Section 14 (b) of the bankruptcy act (11 USCA § 32 [b]),
providing that a discharge shall be denied to a bankrupt who
shall have obtained money or property on credit, etc., by
making or publishing a materially false statement in writing
respecting his financial condition, is not inconsistent with sec-
tion 17 (2) of said act (11 USCA § 35 [2]), which includes
among the debts that will not be canceled, through a discharge
in bankruptcy, liability for obtaining property by false pre-
tenses or false representations, since former applies to bank-
rupt's discharge from all debts, and latter to the effect of
discharge as to a particular debt.

2. SAME—CREDITOR FILING CLAIM IN BANKRUPTCY COURT NOT PRE-
CLUDED FROM ASSERTING CLAIM IN FRAUD.

If bankrupt obtained credit for lumber purchased by false rep-
resentations that he owned farm on which lumber was used to
build barn, creditor was not precluded from asserting claim
for fraud after bankrupt's discharge by having filed claim in
bankruptcy proceeding, but could apply dividend received to
amount of debt, and look to bankrupt for balance.

3. SAME—DUTY OF CREDITOR TO DISCLOSE SECURITY—MAY NOT RE-
CEIVE DIVIDEND ON FULL CLAIM AND ALSO RECOVER SECURITY.

It is duty of creditor to disclose to bankruptcy court all security
that he holds for claim, and is only entitled to dividend on
amount of claim in excess of security; he may not file claim
for full amount of debt and receive dividend based thereon
and at same time recover all of the property in appropriate
suit.

4. SAME—CREDITOR ELECTING TO FILE CLAIM ON CONTRACT WAIVES
RIGHT TO RETURN OF PROPERTY SECURED BY FALSE PRETENSES.

Creditor selling lumber to bankrupt on credit as result of false
representations that he owned farm on which lumber was used
to build barn, whereas it was owned by him and wife by

entireties, by electing to file claim on contract in bankruptcy court, under which dividend was received, waived right to sue for return of lumber or to recover its equivalent by impressing constructive trust on property obtained by bankrupt and wife by entireties in exchange for farm. '

Appeal from St. Clair; Law (Eugene F.), J. Submitted January 7, 1930. (Docket No. 25, Calendar No. 34,673.) Decided March 7, 1930.

Bill by George W. Elston and Otto Griffith, copartners doing business as Elston & Griffith Lumber Company, against David Rusch and another to declare a constructive trust. From a decree for plaintiffs, defendants appeal. Reversed.

*Jay B. Weymouth,* for plaintiffs.

*James A. Muir,* for defendant David Rusch.

*Robert M. Soutar,* for defendant Katherine Rusch.

BUTZEL, J. Defendant David Rusch, in May, 1927, purchased a bill of lumber amounting to $1,253.96 from plaintiffs. It is claimed that he represented he owned a farm upon which he wished to use the lumber to build a barn; that the farm was unmortgaged; that he had $80,000 in other property; that he was a contractor and builder and had a large number of buildings under construction upon which he would be able to realize money about the time of the completion of the barn. Defendant returned a small amount of the lumber, paid the sum of $100 on account, and on November 29, 1927, had reduced the amount of the indebtedness to $1,142.26. Plaintiffs placed a lien upon the farm property for the amount of the indebtedness, but upon finding

that title thereto stood in the names of Rusch and his wife, Katherine Rusch, a codefendant in this case, they abandoned their lien. Defendants made an even exchange of their equity in the farm for property in Port Huron, Michigan, upon which they placed a mortgage of $2,500. There was no boot money paid in the exchange. Defendant David Rusch subsequently filed a petition in bankruptcy and thereafter obtained his discharge. He did not list among his assets the Port Huron property, jointly owned by himself and wife. Plaintiffs duly filed their claim in the bankruptcy court for full amount of $1,253.96, although there was not that amount still due. The claim was filed in the regular form, which stated that it was based "upon a contract." Plaintiffs received a check for $155.71 as a dividend. They still hold the check and await the outcome of this present suit.

Plaintiffs claim that the lumber was obtained by defendant David Rusch through fraud and false representations, and that it was used to improve property owned by defendants by the entirety, which property has been traded for other property by the entirety. They seek to impress the latter property with a constructive trust in their favor for the amount still due them, on the theory of tracing trust property. The lower court adopted plaintiffs' theory, divided the equity of the property held by the entirety into halves, and impressed a lien for the entire amount of plaintiffs' claim upon the undivided half of defendant David Rusch, and ordered it sold.

Defendants have raised a number of questions on appeal. They claim that Rusch's discharge in bankruptcy canceled the debt; that the entirety property cannot be partitioned and the wife de-

prived of her entirety interest in the joint property;
and that a trust of this nature cannot be impressed
upon the property, nor can a lien be placed on the
property without a judgment at law being first ob-
tained.

The bankruptcy act, section 14 (b) (11 USCA
§ 32 [b]), provides that a discharge shall be denied
to a bankrupt who has obtained money or property
on credit, etc., by making or publishing, or causing
to be made or published in any manner whatsoever,
a materially false statement in writing respecting
his financial condition. Section 17 (2) (11 USCA
§ 35 [2]) includes among the debts that will not be
canceled through a discharge in bankruptcy, liabil-
ity for obtaining property by false pretenses or
false representations. These two clauses are not in-
consistent; one applies to his discharge from all
debts, the other to the effect of a discharge as to a
particular debt. If Rusch obtained the credit by
false representations, he is not discharged from lia-
bility for his fraud and deceit in obtaining the credit,
nor are plaintiffs precluded from asserting their
claim in fraud by having filed a claim in the bank-
ruptcy proceedings. They may apply the dividend
to the debt and look to the bankrupt for the balance
thereof. *Friend* v. *Talcott,* 228 U. S. 27 (33 Sup.
Ct. 505); *Frey* v. *Torrey,* 175 N. Y. 501 (67 N. E.
1082), affirming 70 App. Div. 166 (75 N. Y. Supp.
40); *Wheeler & Motter Mercantile Co.* v. *Green,* 97
Okla. 96 (222 Pac. 965); *Standard Sewing Machine
Co.* v. *Alexander,* 68 S. C. 506 (47 S. E. 711); *Blum-
berg* v. *Louis Henne Co.* (Tex. Civ. App.), 5 S. W.
(2d) 1015.

The reason why plaintiffs may sue the bankrupt
for the difference between their claim and the
amount of dividend received in the bankruptcy pro-
ceedings is on account of the damages caused them

through the bankrupt's false representations. They may not, however, file their claim on contract and at the same time maintain a suit to recover the property turned over to the bankrupt for which they claim a constructive trust. It becomes the duty of a creditor to disclose all security that he holds for the claim, and when he retains his right to recover his property originally turned over to the bankrupt, or its equivalent, he should so declare it. He is only entitled to a dividend on the amount of the claim in excess of the security. He may not file a claim for the full amount of the debt and receive a dividend based on it and at the same time recover all of the property in an appropriate suit. This not only would give claimant a preference over other creditors, but would be a fraud on the bankruptcy court. In electing to file their claim on contract in the bankruptcy court, plaintiffs waived their right to the return of the lumber or to recover its equivalent by impressing a trust on the property. They did not waive their right to bring an action against defendant David Rusch for fraud or deceit, provided the debt was created through his fraud or deceit.

In *Hewitt* v. *Hayes*, 205 Mass. 356, 363 (91 N. E. 332, 137 Am. St. Rep. 448), it was held:

"Beneficiaries who do not receive from their trustee or agent what he ought to pay them may either bring an action, with or without an attachment of property, taking the position of an ordinary creditor, or they may seek to enforce their rights by such equitable remedies as are available to them. And while the defaulter remains solvent, so that he can be compelled to meet all his obligations, legal or equitable, there may be no difficulty in allowing them to proceed simultaneously in both ways. But upon the bankruptcy of their debtor or defaulter, the case becomes different. If they appropriate to

themselves a fund which they can reach upon the equitable doctrine that we have stated, they thereby assume a different position from that of ordinary creditors of a common debtor; they assert rights superior to those of ordinary creditors; and by the enforcement of those rights they diminish the fund to which those creditors must look for a dividend. If on the other hand they choose to prove their claims as creditors, they can then look, not merely to the specific fund into which they might have traced some part of their money, but to all the assets, and share in those assets *pari passu* with the other creditors. Obviously in some cases the one course, and in some cases the other, will be for their advantage. And these are wholly inconsistent remedies. In one case, they rank themselves as creditors; in the other, they claim to be entitled to a charge upon some specific fund or property. Under these circumstances, it is the right of the general creditors and of the trustee in bankruptcy as their representative to require those who have the choice of these inconsistent remedies to elect between them. And their final adoption of one course, their completed election to avail themselves of one remedy, if made without mistake and with full knowledge of all the circumstances, is a bar to their pursuit of the other remedy.''

To like effect are: *Standard Varnish Works* v. *Haydock* (Cir. Ct. of App., 6th Cir.), 143 Fed. 318; *In re Jacob Berry & Co.* (Cir. Ct. of App., 2d Cir.), 174 Fed. 409.

Inasmuch as this disposes of the lien claimed by plaintiffs, it is unnecessary to discuss the other serious questions raised. The decree of the lower court is reversed, with costs.

WIEST, C. J., and CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred. POTTER, J., took no part in this decision.